CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
3/27/2024
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
(Charlottesville Division)

PINNACLE CONSTRUCTION
AND DEVELOPMENT CORPORATION,

     Plaintiff,

v.                                  Civil Action No. _3:24cv00018_

SIGNATURE BUILDING SYSTEMS
OF PENNSYLVANIA, LLC,
     Serve:  Virginia Registered Agent Services, LLC, Reg. Agent
            4445 Corporation Lane, Ste. 264
            Virginia Beach, VA 23462-3462
            (City of Virginia Beach)

     Defendant.

## **COMPLAINT**

     Pinnacle Construction and Development Corporation ("Pinnacle"), by counsel, for its

Complaint against Signature Building Systems of Pennsylvania, LLC ("SBS") states as follows:

### PARTIES

     1.     Pinnacle is a Virginia corporation with its principal place of business in Virginia

and is authorized to do business and doing business in the Commonwealth of Virginia and.

     2.     SBS is, upon information and belief, a Pennsylvania corporation with its principal

place of business in Pennsylvania and is authorized to do business and doing business in the

Commonwealth of Virginia.

1

JURISDICTION

3.      This Court has jurisdiction over this matter under 28 U.S.C. § 1332(a) because Pinnacle and SBS are citizens of different states and the amount in controversy exceeds $75,000, excluding interests and costs.

VENUE

4.      Venue is proper in this district and division pursuant to Section 32 of the January 21, 2021 Design-Build Subcontract Agreement (the "Agreement") between Pinnacle and SBS.

BACKGROUND

5.      Pinnacle was the general contractor for the construction of the Gateway Senior Apartments in Fishersville, Virginia (the "Project").

6.      In the Agreement, SBS agreed to design, fabricate, and install modular units for the Project.  A true and accurate copy of the Agreement is attached hereto as Exhibit A.

7.      The Agreement provides in relevant part as follows: "Subcontractor warrants that the Subcontract Work will be fully performed in a good and workmanlike manner, will be free from defects, and will conform to the Subcontract Documents."  (Agreement § 22.)

8.      The Agreement further provides in relevant part as follows:

- Contractor may withhold or deduct from any payment otherwise due under this Subcontract Agreement . . . a reasonable amount as may be reasonably necessary to protect Contractor or Owner from all loss or damage, including reasonable attorney's fees, arising from Subcontractor's failure to . . . perform properly or in a timely fashion the Subcontract Work. Contractor shall be permitted to use payments otherwise due Subcontractor to . . . correct any deficiencies in or complete the Subcontract Work; and to reimburse Contractor for all damages, costs, and expenses, including but not limited to the costs of any bond and reasonable attorney's fees, incurred by Contractor as a result of Subcontractor's failure . . . to perform properly or in a timely fashion the Subcontract Work.  (Agreement § 4.)

9.      The Agreement further provides in relevant part as follows:

- To the fullest extent permitted by law, the Subcontractor agrees to defend, indemnify, save and hold harmless, the Owner and Contractor from and against all claims, liabilities, demands, damages, losses, costs and expenses, including reasonable attorneys' fees incurred, awards, fines and judgments, of every kind and nature whatsoever, including the obligations of Contractor on account of any similar agreement Contractor has with the Owner arising by reason of personal injury, the death of or bodily injury to persons (including employees of Subcontractor), design defects (if design originated from Subcontractor), damage to or destruction of property or the loss of use thereof, arising out of or alleged to have arisen out of in whole or in part, or in connection with, Subcontractor's Work or the operations to be performed under this Subcontract Agreement or any act or omission of Subcontractor, its suppliers or lower tier subcontractors, or anyone for whose act it may be liable; provided, however, that Subcontractor shall have no obligation to defend or indemnify Owner or Contractor to the extent that any such claim, liability, demand, damages, loss, costs, expense, award, fine or judgment arises from Owner's or Contractor's own negligence or willful misconduct.  (Agreement § 16.)

- Subcontractor agrees to defend, indemnify, save and hold harmless the Owner and Contractor from and against all claims, liabilities, demands, damages, losses, costs and  expenses, including reasonable attorneys' fees, awards, fines and judgments, of every kind and nature whatsoever, excluding, however, any claims for liquidated damages, arising by reason of any breach by Subcontractor of this Subcontract Agreement. (Agreement § 16.)

- Subcontractor agrees to defend, indemnify, save and hold harmless Contractor from and against all claims, liabilities, demands, damages, losses, costs and expenses, including reasonable attorneys' fees incurred, awards, fines and judgments, of every kind and nature whatsoever, brought by Owner against Contractor on account of, relating to, or arising in any way from the Subcontract Work.  (Agreement § 16.)

10.    The modular units designed, manufactured, and installed by SBS for the Project were defective in numerous material respects.  By way of example and not limitation:

- Drywall fire ratings were in violation of applicable building codes and the Project plans and specifications;

- Stair risers and treads were incorrect and incomplete;

- Drywall had cracks and was poorly finished;

3

- Entry doors were installed at the incorrect elevation;

- Common area doors were installed at the incorrect elevation;

- Interior doors were not set correctly;

- Baseboard was not installed behind removable base cabinets per the requirements of the Virginia Housing Development Authority;

- Removable base cabinet panels were too narrow;

- Cabinets were not properly attached to the walls;

- Cabinets did not have four screws in each cabinet as required by the Virginia Housing Development Authority;

- Doors were missing hardware, including hinges, strike plates, and closers;

- Entry locks for units were not rated;

- Doors were missing parts and trim;

- Plumbing was installed incorrectly;

- Toilets were installed at incorrect locations;

- Water heater piping was installed incorrectly;

- HVAC supply boots were installed incorrectly;

- Electrical was installed incorrectly;

- Sprinkler heads were installed incorrectly;

- Framing for cassette units was incorrect;

- Framing for returns was incorrect;

- VRP sleeve framing was incorrect;

- Unit framing was out of square;

- Walls in corridor were out of plane;

- Floor elevations at mate walls were incorrect;

4

- Closet flooring was installed incorrectly; and

- Flooring at cabinets was installed incorrectly.

11.    Pinnacle notified SBS of the material defects, but SBS failed and refused to correct them.  Pinnacle incurred costs in the amount of $496,787.59 to correct the deficiencies.

<u>COUNT ONE</u>
<u>BREACH OF CONTRACT</u>

12.    Pinnacle realleges and incorporates herein by reference the allegations set forth in Paragraphs 1 through 11, above.

13.    SBS substantially and materially breached the Agreement by designing, manufacturing, and installing defective modular units for the Project.  By way of example and not limitation:

- Drywall fire ratings were in violation of applicable building codes and the Project plans and specifications;

- Stair risers and treads were incorrect and incomplete;

- Drywall had cracks and was poorly finished;

- Entry doors were installed at the incorrect elevation;

- Common area doors were installed at the incorrect elevation;

- Interior doors were not set correctly;

- Baseboard was not installed behind removable base cabinets per the requirements of the Virginia Housing Development Authority;

- Removable base cabinet panels were too narrow;

- Cabinets were not properly attached to the walls;

- Cabinets did not have four screws in each cabinet as required by the Virginia Housing Development Authority;

- Doors were missing hardware, including hinges, strike plates, and closers;

- Entry locks for units were not rated;

- Doors were missing parts and trim;

- Plumbing was installed incorrectly;

- Toilets were installed at incorrect locations;

- Water heater piping was installed incorrectly;

- HVAC supply boots were installed incorrectly;

- Electrical was installed incorrectly;

- Sprinkler heads were installed incorrectly;

- Framing for cassette units was incorrect;

- Framing for returns was incorrect;

- VRP sleeve framing was incorrect;

- Unit framing was out of square;

- Walls in corridor were out of plane;

- Floor elevations at mate walls were incorrect;

- Closet flooring was installed incorrectly; and

- Flooring at cabinets was installed incorrectly.

14.     As a direct and proximate result of SBS' substantial and material breach of the Agreement, Pinnacle incurred costs in the amount of $496,787.59 to correct the deficiencies.

15.     As a direct and proximate result of SBS' substantial and material breach of the Agreement, Pinnacle has incurred and will incur attorney's fees

16.     Pinnacle offset the Agreement's remaining balance of $174,486.26 against the costs it incurred to correct the deficiencies.  After offset of the remaining Agreement balance of

$174,486.26, Pinnacle has been damaged in the amount of at least $322,301.33, plus its reasonable attorney's fees.

WHEREFORE, Pinnacle Construction & Development Corporation, by counsel, prays that the Court enter judgment in its favor in the amount of at least $322,301.33; award it pre- and post-judgment interest, its costs as by law allowed, and its reasonable attorney's fees pursuant to Sections 4 and 16 of the Subcontract Agreement; and grant such other and further relief as the Court may deem appropriate.

Respectfully Submitted,

PINNACLE CONSTRUCTION AND
DEVELOPMENT CORPORATION

By Counsel

COUNSEL:

/s Elisabeth L. Manuel
Elisabeth L. Manuel, Esquire (VSB # 41261)
Smith Bain Manuel LLP
455 Second Street, S.E., Suite 402
Post Office Box 240
Charlottesville, VA  22902
Telephone:     (434) 293-1200
Facsimile:     (434) 293-2135
Email:  bmanuel@smithbain.com

*Counsel for Pinnacle Construction and Development Corporation*

S:\OFFICE\PINNACLE\PCDC v.  SBS\Complaint.001.v2.docx