IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
(Charlottesville Division)

PINNACLE CONSTRUCTION
AND DEVELOPMENT CORPORATION,

    Plaintiff,

v.                                        Civil Action No. 3:24-cv-18

SIGNATURE BUILDING SYSTEMS
OF PENNSYLVANIA, LLC,

    Defendant.

## MOTION FOR ENTRY OF DEFAULT JUDGMENT
## AND BRIEF IN SUPPORT THEREOF

Pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, Pinnacle Construction

and Development Corporation ("Pinnacle"), by counsel, for its Motion for Entry of Default

Judgment and Brief in Support Thereof states as follows:

## MOTION FOR ENTRY OF DEFAULT JUDGMENT

1.      On May 20, 2024, Pinnacle filed an Amended Complaint against Building

Systems of Pennsylvania, LLC ("SBS").  ECF Document No. 16.[1]

2.      Despite being properly served with the original Summons and Amended

Complaint, SBS did not file responsive pleadings.

3.      On June 20, 2024, upon application of Pinnacle, the Clerk entered default against

SBS with respect to the Amended Complaint.  ECF Document No. 19.

4.      The allegations of the Amended Complaint support the relief sought.

---

[1] The Amended Complaint filed as ECF No. 16 is the same as the Amended Complaint filed as ECF No. 13, except that it attaches Exhibit A, which was inadvertently omitted from ECF No. 13.

5.      The supporting affidavit of William Park, President of Pinnacle, is attached hereto as Exhibit 1.  As reflected in Mr. Park's affidavit, Pinnacle's damages are $327,403.83.

6.      The supporting affidavit of Elisabeth L. Manuel, Esq. is attached hereto as Exhibit 2.

7.      A copy of this Motion for Entry of Default Judgment was mailed to counsel for SBS and to SBS' registered agent.

Wherefore, Pinnacle Construction & Development Corporation, by counsel, prays that the Court enter default judgment in its favor and against Signature Building Systems of Pennsylvania, LLC in the amount of $327,403.83; award it its costs in the amount of $405.00; grant it pre judgment interest on $322,301.33 at a rate of 6% from August 12, 2022 to the date of judgment; award it post-judgment interest on the entire judgment at the rate distributed by the Director of the Administrative Office of the United States Courts in effect as of the date of the judgment, 5.20% for June 2024; and grant it such other and further relief as the Court may deem appropriate.

## BRIEF IN SUPPORT OF MOTION FOR ENTRY OF DEFAULT JUDGMENT

A defendant in default admits a complaint's well-pleaded allegations of fact, but not its conclusions of law.  *Ryan v. Homecoming's Financial Network*, 253 F.3d 778, 780 (4th Cir. 2001). Prior to entering a default judgment, the Court must determine whether the well-pleaded allegations support the relief sought."  *Id.*  "The appropriate inquiry for the court is whether 'the face of the pleadings supports the default judgment and the causes of action therein.'"  *Alexa Lowe, LLC v. Etheridge*, Civil Action No. 5:20-cv-00054, 2023 U.S. Dist. LEXIS 155337, at * 7 (W.D. Va. 2023), *quoting JTH Tax, Inc. v. Grabert*, 8 F. Supp. 3d 731, 736 (E.D. Va. 2014).  If the plaintiff "clears that threshold, the Court must then determine what damages award is

supported by the record." *Morton v. Johnson*, Civil Action No. 7:13-cv-00496, 2015 U.S. Dist.

LEXIS 842224, *14 (W.D. Va. 2015).

I.      The Allegations of the Amended Complaint Support the Relief Sought.

   A.      The Court has Jurisdiction Over SBS.

      1.      The Court Has Personal Jurisdiction Over SBS.

Virginia's "long-arm" statute, Virginia Code § 8.01-328.1 provides that a court may

exercise personal jurisdiction over a party as to a cause of action arising from the party's

"transacting any business in" Virginia.  Virginia Code § 8.01-328.1(A)(1).  This matter arises out

of SBS' deficient design, manufacture, and installation of modular units for a project in

Fishersville, Virginia.  Amended Complaint ¶¶ 5-6.  It arises out of SBS' transacting business in

the Commonwealth.

In addition, Pinnacle properly served the Summons and Amended Complaint on SBS'

registered agent pursuant to Federal Rule of Civil Procedure 4(e)(2)(c), which authorizes service

by delivering a copy of the summons and complaint to "an agent authorized by appointment or

by law to receive service of process."  *See* ECF Document No. 17 (Affidavit of Service).  This

Court has personal jurisdiction over SBS.

      2.      The Court has Subject Matter Jurisdiction over SBS.

The "burden of establishing jurisdiction resets with the plaintiff 'as the party asserting

jurisdiction.'"  *AGI Assocs., LLC v. City of Hickory, N.C.*, 773 F.3d 576, 578 (4th Cir. 2014),

*quoting Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)(discussing burden in context of

appeal from Fed. R. Civ. Pro 12(b)(6) motion to dismiss for lack of subject matter jurisdiction).

The Court has diversity jurisdiction where a civil action is between citizens of different states.

28 U.S.C. § 1332(a)(1).  The citizenship of limited liability company is be determined by the

citizenship of its members.  *Contreras v. Thor Norfolk Hotel, L.L.C.*, 292 F. Supp. 2d 794, 798

(E.D. Va. 2003).  A corporation is a citizen of every state in which it is incorporated and where it

has a principal place of business.  28 U.S.C. § 1332(c)(1).

Here, the Amended Complaint alleges as follows:

> 3.      This Court has jurisdiction over this matter under 28 U.S.C. §
> 1332(a) because Pinnacle and Signature are citizens of different states and
> the amount in controversy exceeds $75,000, excluding interests and costs.
> Specifically, Pinnacle is a citizen of Virginia because it is a  corporation
> incorporated and with its principal place of business is in Virginia.  SBS is
> a citizen of Pennsylvania because its sole member, Signature Building
> Systems, Inc., is citizen of Pennsylvania.  Signature Building Systems,
> Inc., is citizen of Pennsylvania because it is a corporation incorporated and
> with its principal place of business in Pennsylvania.

The Amended Complaint sufficiently alleges diversity jurisdiction.  *See* 28 U.S.C. §

1332(a)(1)(federal courts have jurisdiction over civil actions between citizens of different states).

The Court has subject matter jurisdiction over SBS.

B.      The Allegations of the Complaint Support the Relief Sought.

Pinnacle's claim against SBS is for breach of a contract, the Subcontract Agreement

between Pinnacle and SBS (the "Agreement").  The elements of a claim for breach of contract

are "a (1) legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation

or breach of that obligation; and (3) injury or damage to the plaintiff caused by breach of

obligation."  *Filak v. George*, 267 Va. 612, 619, 594 S.E.2d 610, 614 (2004).

Here, Pinnacle alleges in its Amended Complaint the following:

> 6.      In the Agreement, SBS agreed to design, fabricate, and install
> modular units for the Project.  A true and accurate copy of the Agreement is
> attached hereto as Exhibit A.

> 7.      The Agreement provides in relevant part as follows:
> "Subcontractor warrants that the Subcontract Work will be fully performed in a
> good and workmanlike manner, will be free from defects, and will conform to the
> Subcontract Documents."  (Agreement § 22.)

4

* * *

13.      SBS substantially and materially breached the Agreement by designing, manufacturing, and installing defective modular units for the Project. By way of example and not limitation:

- Drywall fire ratings were in violation of applicable building codes and the Project plans and specifications;
- Stair risers and treads were incorrect and incomplete;
- Drywall had cracks and was poorly finished;
- Entry doors were installed at the incorrect elevation;
- Common area doors were installed at the incorrect elevation;
- Interior doors were not set correctly;
- Baseboard was not installed behind removable base cabinets per the requirements of the Virginia Housing Development Authority;
- Removable base cabinet panels were too narrow;
- Cabinets were not properly attached to the walls;
- Cabinets did not have four screws in each cabinet as required by the Virginia Housing Development Authority;
- Doors were missing hardware, including hinges, strike plates, and closers;
- Entry locks for units were not rated;
- Doors were missing parts and trim;
- Plumbing was installed incorrectly;
- Toilets were installed at incorrect locations;
- Water heater piping was installed incorrectly;
- HVAC supply boots were installed incorrectly;
- Electrical was installed incorrectly;
- Sprinkler heads were installed incorrectly;
- Framing for cassette units was incorrect;
- Framing for returns was incorrect;
- VRP sleeve framing was incorrect;
- Unit framing was out of square;
- Walls in corridor were out of plane;
- Floor elevations at mate walls were incorrect;
- Closet flooring was installed incorrectly; and
- Flooring at cabinets was installed incorrectly.

14.      As a direct and proximate result of SBS' substantial and material breach of the Agreement, Pinnacle incurred costs in the amount of $496,787.59 to correct the deficiencies.

5

Those allegations are admitted by SBS' failure to appear. *See Ryan*, 253 F.3d at 780 (failure to appear admits well-pleaded allegations of fact). They properly allege a claim for breach of contract under Virginia law: (1) a legally enforceable obligation on the part of SBS to Pinnacle, *i.e.,* the Subcontract Agreement (Amended Complaint ¶ 6); (2) SBS' violation or breach of that obligation (Amended Complaint ¶¶ 7, 13); and (3) injury or damage to Pinnacle caused by SBS' breach (Amended Complaint ¶ 14). *See Filak*, 267 Va. at 619, 594 S.E.2d at 614 (setting forth elements of claim for breach of contract). The allegations of Pinnacle's Amended Complaint support default judgment on its claim for breach of contract.

C.    Pinnacle is Entitled to an Award of Damages in the Amount $327,403.83.

The "object of the law in awarding damages is to make amends, or reparations, by putting the party injured in the same position, as far as money can do it, as he would have been if the contract had been performed. *Lehigh Portland Cement Co. v. Virginia Steamship Co.*, 132 Va. 257, 270, 111 S.E. 104 (1922).

1.    Pinnacle's Damages Include the Costs to Correct SBS' Deficient Subcontract Work.

Cost of correction or completion "ordinarily affords the proper basis for measuring the damages" for breach of a construction contract. *Nichols Const. Corp. v. Va. Mach. Tool Co., LLC*, 276 Va. 81, 89, 661 S.E.2d 467, 472 (2008). In addition, Section 4 of the Subcontract Agreement between Pinnacle and SBS requires SBS to reimburse Pinnacle for "all damages, costs, and expenses, including but not limited to the costs of any bond and reasonable attorney's fees, incurred by Contractor as a result of Subcontractor's . . . failure to perform properly or in a timely fashion" the Subcontract Work." Subcontract Agreement § 4.

As set forth in the Affidavit In Support of Motion for Entry of Default Judgment of William Park attached hereto as Exhibit 1, Pinnacle paid third parties $382,144.30 for costs to

correct SBS' material deficiencies in its Subcontract Work at the Project.  Pinnacle includes as

part of its claim an additional amount of 30% of the base costs as compensation for internal costs

that it incurred to evaluate the defects and appropriate methods of repair, for personnel expenses

incurred in the field and office to manage and supervise the corrective work, and as

compensation for home office expenses.  The 30% charge for overhead was reasonable and

commensurate with the amount of time and effort required to correct the many deficiencies in

SBS' Subcontract Work.  The total amount of Pinnacle's damages for the costs to correct SBS'

defective Subcontract Work is $496,787.59. (Park. Aff. ¶ 7, Exh. A.)

The remaining balance owed to SBS under the Agreement was $174,486.26.  Pinnacle

offset that amount against the $496,787.59 in costs it incurred to correct the deficiencies in SBS'

Subcontract Work.  After offset of the remaining Agreement balance of $174,486.26, Pinnacle

has been damaged in the amount of $322,301.33 with respect to the costs to correct the

deficiencies in SBS' Subcontract Work.  (Park Aff. ¶ 8.)

2.    <u>Pinnacle's Damages Include its Reasonable Attorney's Fees</u>.

Pinnacle requested an award of attorney's fees in its prayer for relief in the Amended

Complaint.  In diversity cases, the Court may award reasonable attorney's fees to the extent

permissible under the applicable substantive state law.  *Westwind Acquisition Co., LLC v.*

*Universal Weather & Aviation, Inc.*, 668 F. Supp. 2d 749, 754 (E.D. Va. 2009).  In Virginia, "[i]n

general, attorney's fees are not recoverable as damages.  However, one exception to the general

rule is where the parties by contract agree that attorney's fees will be recoverable." *East Texas*

*Salvage & Machine v. Duncan*, 226 Va. 160, 161, 306 S.E.2d 896, 897 (1983).

Section 4 of the Subcontract Agreement between Pinnacle and SBS requires SBS to

reimburse Pinnacle for "all damages, costs, and expenses, *including but not limited to* the costs

7

of any bond and *reasonable attorney's fees*, incurred by Contractor as a result of Subcontractor's

. . . failure to perform properly or in a timely fashion" the Subcontract Work." Subcontract

Agreement § 4 (emphasis added). Section 16 of the Subcontract Agreement between Pinnacle

and SBS provides in relevant part that "Subcontractor agrees to defend, indemnify, save and hold

harmless the Owner and Contractor from against all claims, liabilities, demands, damages,

losses, costs and expenses, *including reasonable attorneys' fees*, awards, fines and judgments of

every kind and nature whatsoever arising by breach by Subcontractor of this Subcontract

Agreement." (Subcontract Agreement ¶ 16 (emphasis added).)

Under the plain language of the Subcontract Agreement, Pinnacle is entitled to an award

of its reasonable attorney's fees incurred as a result of SBS' failure to perform properly its

Subcontract Work or arising from SBS' breach of the Subcontract Agreement. Those fees

include the fees Pinnacle incurred in this matter, which would not have been incurred but-for the

fact that SBS failed to perform properly the Subcontract Work and then refused to reimburse

Pinnacle as required by the Subcontract Agreement. To date, Pinnacle has incurred $5,102.50 in

attorney's fees in connection with this matter. (Manuel Aff. ¶ 7.)

As for whether those fees where "reasonable," in determining the reasonableness of a fee,

the court should consider "such circumstances as the time consumed, the effort expended, the

nature of the services rendered, and other attending circumstances . . . .'" *Seyfarth, Shaw,*

*Fairweather & Geraldson v. Lake Fairfax Seven Ltd P'ship*, 253 Va. 93, 96, 480 S.E.2d 471, 473

(1997), *quoting Mullins v. Richlands Nat'l Bank*, 241 Va. 447, 449, 403 S.E.2d 334, 335 (1991).

Expert testimony is not required to establish a *prima facie* case where a party produces affidavits

and detailed time records of its attorneys. *Id.* at 96-97, 480 S.E.2d at 473.

Ms. Manuel's affidavit and supporting time records indicate total fees of $5,102.50 for

this matter, which reflects 23 hours of work, an average of $221.85 per hour.[2]  Ms. Manuel's

affidavit avers that in relevant part as follows:

> The fees identified on the time records attached hereto as Exhibit A
> were reasonable, necessary, and appropriate for Smith Bain Manuel,
> LLP's representation of Pinnacle and commensurate with the skill
> required for the task performed.  The number of hours spent on the
> respective tasks were reasonable given the nature of the dispute.  The
> rates that Smith Bain Manuel, LLP charged were the standard rates that
> we customarily charged Pinnacle in other cases, were consistent with
> prevailing rates in Virginia for similar work, and were commensurate
> with our experience, ability, and reputation.

(Manuel Aff. ¶ 8.)  Pinnacle has established its *prima facie* case that its attorney's

fees in the amount of $5,102.50 were reasonable.

Pinnacle's total damages awardable under Virginia law and Sections 4 and 16

of the Subcontract Agreement are $327,403.83 ($322,301.33 + $5,102.50).

D.    Pinnacle is Entitled to an Award of its Costs and Pre- and Post-Judgment Interest.

Pinnacle requested an award of its costs and pre- and post-judgment interest in its prayer

for relief in the Amended Complaint.  As reflected in the record in this case, Pinnacle paid a

filing and administrative fee of $405.00 upon filing of its Complaint.  (ECF Document No. 1

Docket Text.)  Pinnacle is entitled to award of those fees pursuant to Federal Rule of Civil

Procedure Rule 54(d)(1).

An award of pre-judgment interest in a diversity case is governed by state law.  *Hitachi*

*Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 633 (4th Cir. 1999).  Under Virginia Code § 8.01-

---

[2] Ms. Manuel's hourly rate for this matter was $325/hour but she did not charge for, and Pinnacle is not seeking, damages for costs related to responding to the Court's Order to Show Cause.  Those time entries show "0.00" as the rate for that work.

382, an award of pre-judgment interest is discretionary.  *See Va. Code* § 8.01-382 (court may provide for interest on principal sum awarded and fix period at which interest shall commence).

Here, as reflected in Exhibit A of the Affidavit of William Park, Pinnacle performed extensive corrective work that SBS was obligated to perform and began incurring costs in December 2021.  The last of those costs was incurred on August 12, 2022.  Pinnacle has been without the time-value of its money without justification since no later than August 12, 2022.  To make it whole, Pinnacle requests interest on its construction cost damages of $322,201.33 at the six percent (6%) Virginia legal rate of interest from August 12, 2022 through the date of judgment.

Pursuant to 28 U.S.C. § 1961, Pinnacle is also entitled to an award of post-judgment interest at the rate distributed by the Director of the Administrative Office of the United States Courts in effect as of the date of the judgment, currently 5.20%.

CONCLUSION

SBS is in default in this matter.  The allegations of the Amended Complaint support the relief sought by Pinnacle.  Pinnacle's affidavits support the damages claimed.

Wherefore, Pinnacle Construction & Development Corporation, by counsel, prays that the Court enter default judgment in its favor and against Signature Building Systems of Pennsylvania, LLC in the amount of $327,403.83; award it its costs in the amount of $405.00; grant it pre judgment interest on $322,201.33 at a rate of 6% from August 12, 2022 to the date of judgment; award it post-judgment interest at the rate distributed by the Director of the Administrative Office of the United States Courts in effect as of the date of the judgment, 5.20% for June 2024; and grant it such other and further relief as the Court may deem appropriate.

10

Respectfully Submitted,

PINNACLE CONSTRUCTION AND
DEVELOPMENT CORPORATION

By Counsel

COUNSEL:


/s Elisabeth L. Manuel_____
Elisabeth L. Manuel, Esquire (VSB # 41261)
Smith Bain Manuel LLP
455 Second Street, S.E., Suite 402
Post Office Box 240
Charlottesville, VA  22902
Telephone:     (434) 293-1200
Facsimile:      (434) 293-2135
Email:  bmanuel@smithbain.com

*Counsel for Pinnacle Construction and Development Corporation*

S:\OFFICE\PINNACLE\PCDC v.  Signature\motion.default.judgment.docx